Mr. Singh is a citizen of the National of India. He originally came to the United States in 1990. He married a U.S. citizen in 1993 and adjusted his status to a resident status in 1996. He was convicted of misdemeanor, class B misdemeanor harassment in Marriott County in 1998. In 1999, the then Immigration and Naturalization Service put him on receiving. So the only real question here is under the categorical approach whether the harassment statute contains things that are sufficiently trivial that we can't tell whether he's been convicted of. Actually, there are two issues. We only argued one in our brief, but there are two issues. One is whether the – If you've only argued one in your brief, you can only argue one here. What's the issue in your brief? The issue in the brief is whether the subjecting someone to offensive physical contact is the same as using the use or attempted use of physical force against the person, which is what ABUSC Section 1227 P2E requires. In fact, the United Circuit has spoken to this issue in another context. The government cited a case recently in its submission on Friday, the Bolesz v. United States case. And in that case, the United – the United Circuit last year found specifically that the term misdemeanor crime of domestic violence does not include de minimis contacts. It requires actual force and violence. And the – And your position is that under the state statute here, something quite trivial can be offensive without requiring the use or attempted use of force. Absolutely. That would be the Oregon case, State v. Salinger. State v. Salinger says the minimum offense included under class B misdemeanor harassment are trivial slaps and kicks, essentially invasions of privacy, unauthorized contacts, something as simple as tapping someone on the shoulder. Isn't the Oregon statute what it requires, something like the common law standard for battery, just any kind of offensive touching? That's correct, Your Honor. And the offensive touching could be poking your finger on someone's chest or touching someone on the cheek when it wasn't invited. It could be any touching. It doesn't have to involve the use of force, which appears to be required by the federal statute. That's correct, and that's precisely the distinction that the Bolesz court made, where it found that a similar Wyoming statute for battery did not constitute a misdemeanor crime of domestic violence. This panel also asked me to address the issue of how the Cotley case applies to this case. You've also said that you don't want me to argue whether this is a domestic crime. So I don't know if you want me to proceed. The only thing I would say with that regard is that going over the case law, it does say that there are three exceptions to the rule. If it wasn't in your brief, I think you shouldn't be addressing it. Okay. At least that's what I understood of the presiding judge here. Any of my colleagues can ask him. You can ask him. Please go ahead and answer his question. I'd like to direct your answer or the issue, because I think there is a procedural issue here that may be a complete barrier. You took Cotley came out after your briefs were filed, is that right? That's correct. So this might be subject to an exception to the waiver issue if we were only talking about waiver, but what about exhaustion of the agency? Well, we did not exhaust the we didn't make the argument. And, in fact, it never came up. Essentially, the government asserted as a charge that the victim was Mr. Singh's wife and that the charge was conceded. And the issue was never further discussed after that. Well, you may be just fine because of the other issue. Well, we hope so. Well, do you. If we were allowed to argue it, the argument would be that this is not the problem here is that the there is no evidence in the record to show and the record of conviction to show that this wasn't done. It doesn't really show in a Taylor type analysis that that you had a domestic crime. Because the I guess the charging documents are for Linda Singh, but doesn't say that she's the stops. But if you didn't if you didn't argue it in your brief, you know, there may be ways we could reach it. But I'll just let you know, I'm not going to reach it. I understand. Well, essentially, our argument brings us back to our argument that the amount of force involved simply wasn't sufficient. And I think that that issue is governed by the case. There's not really much else to say about. OK. You're welcome to reserve your time. Yeah, you're welcome to reserve your time. Thank you. Thank you. Mr. Hunter. Please, the court. I'm James, you know, representing the respondent in this case. We do agree that the sole issue with the court is whether the state harassment statute physical contact falls under the requirement that the crime involved physical force. Well, let's just get right to the core of that. First of all, I don't see how you can contend that any offense of touching is a use of force. Your Honor. Within the meaning of the federal statute. That's first. If we were looking at it fresh and then second, even if that argument could be made, why isn't it foreclosed by the Bellis case? I think the answer to both of the Your Honor's questions lies in the Salinger case from the state court, which interpreted the state harassment statute, subsection H1. But after Salinger, there was another case, wasn't there, Keller, which interpreted Salinger? That's correct, Your Honor. So spitting? All right. So spitting, would that keep the use of physical force? Spitting being an assault? Yes, Your Honor. That's physical force. Is spitting a use of force under the federal statute? Yes, it is, Your Honor. Congress did not, in defining crime of violence, specify any quantum of physical force. Do you have any precedent in any federal circuit or any federal district court that would suggest that the federal statute is satisfied in terms of the use of force by conduct of spitting or any other similar type of level, you know, something of that degree? Do you have any precedent? I understand it's your job to stand here and make the argument, but do you have any precedent? I think the best precedent we would have, and I understand the risk. It's not an Oregon statute. Yes. We're dealing with the federal statute and the interpretation of it. So there are district courts all around the country, and this may have come up on, you know, with regard to other statutes. What's your best precedent for your interpretation of the federal statute? I suppose the board's decision in Martin, which you cite in our brief, which … Isn't it specifically disapproved by the courts that have looked at it? It was disapproved by the Seventh Circuit in Flores. I do not recall any other court, but in Flores, it was disapproved. Not by – isn't it entirely consistent with Bellis as well? I'm not certain. I have not compared them, Your Honor. But it did note in Martin that Congress really did set a low threshold with regard to the quantum of physical force, and that's what we're talking about. Okay. But I … The force – the settlement of force is required, and not – I guess even as a matter of common parlance, without regard to cases, I don't understand how any offensive touching equates to force. If I reached over and patted Judge Gould on the shoulder and he didn't want me to, that would be an offensive touching. I would take offense. It would be a battery. But I – that isn't necessarily with any force of any kind. As we underread the Salinger case, it does require such things as kicking, shoving, slapping. Et cetera. And then it says, et cetera, and it specifically calls them trivial. And … Well, Your Honor, that … And causing spittle to land is what terror deals with, which doesn't require any direct touching at all. Your Honor, the trivial reference came from the legislative history of the statute to distinguish it between assaults that cause injury. Correct. And that we do not mean to be trivial in the aspect of may merely be overlooked. It was, in fact, made a crime. If somebody went up to somebody else who said, you know, leave me alone and kiss them, would that violate the statute? Almost surely, yes, right? I'm sorry? Almost surely, yes. Probably, but not certainly. That was – not certainly, Your Honor, because that was … Almost certainly is what I said. No, that was, I believe, an example used by the concurring opinion. I understand that, but I'm asking you given the wording of the statute and what was described and its obvious purpose, which is to preclude people from harassing other people, if somebody goes up and five times kisses them, it's very unlikely that spitting is a violation, that that's not going to be a violation. It is possible, and it does require some force, as I stated. The question here is the quantum of force. I'm still trying to get an answer to the question I asked you earlier. I didn't hear an answer. My question was – let me just be as explicit as I can be. We have a federal statute that requires a crime of violence, which is 18 U.S.C. section 16A. So my question was, what is your best judicial precedent? Not an opinion of the board that was disapproved by a court, but your best either federal district court or circuit court case where that language, crime of violence, has been interpreted to embrace physical force, embrace as physical force an offensive touching such as would be permitted by the Oregon statute. I haven't heard you give me a case, so maybe you don't have one. I do not have one at hand. Okay, well, then you should just say that. The BIA government doesn't have a case. I apologize. I did not understand your question to refer to judicial cases. I referred to the board's decision. As I stated, the quantum of force is not specified in the statute. What does force mean? Leaving aside quantum, what is force? Force was addressed in the briefs. It is the, in this context, I think, would fit within the term of physical contact, which is the state and interstate statute of offensive physical contact. That is, one must use force to accomplish offensive physical contact. And with that ---- So are you arguing essentially that force is, I mean, as the case is, both Bellis and the Seventh Circuit case said, that obviously in a sense of physics, if I go like that, I'm using force. Is that your argument, that the physical ---- There, I have to concede that there are contacts that are too trivial but may not fit under the state statute in light of the state's rules. But you may argue that there are contacts that are too trivial but may not fit under the state statute in light of the state's rules. As I said, I'm arguing that there are contacts that are too trivial but may not fit under the state statute in light of the state's rules. May I ask, before my time runs out, whether the Court has any questions about the Cotley case in which we assert that, at a minimum, exhaustion has not been pursued. This Court may not address it under Section 242D of the Act. I don't believe that any of us has a question. Your Honor, in summing up, we submit that Congress did not, in Title VIII, subsection 16, specify any quantity of physical force required. The State does require some physical force in violating the statute. As a consequence, because it does fit under that federal definition, we believe that the order of removal should be upheld, and the fourth and integration treasuries should be upheld. Thank you. Thank you, Counsel. Mr. Hashee, you have some time remaining if you'd like to use it. Thank you, Your Honor. Judge Foley wrote a concurrence in the State v. Salinger case in which he pointed out that this does, that the Oregon statute is intended to pick up specifically batteries in States. I conclude the draftsmen were thinking in terms of the common law meaning of battery when they made the analogy between battery and harassment, that common law, any touching of another with the rightmost intent, could constitute a battery. Thus, a person who kissed a total stranger or placed his hands on, for example, a stranger's sexual organs or spat in a stranger's face would have committed a common law battery. I believe the harassment statute was intended to cover such situations and all others, including an unconsented, unprivileged, unauthorized physical contact. I think that's what we're talking about here. I believe that if the Court were to adopt the government's position here, we would have reached an absurd result. The statute, that is, 8 U.S.C., 12 U.S.C., and 82 E.I., requires the use or attempted use of physical force. And as pointed out in, I believe, the Bolesk case or one of the other cases that the government cited, this could include under a different statute a spouse cutting up the other spouse's credit card because 18 U.S.C. section 16A refers to not only physical force against the person, but also against property. I don't think these kinds of de minimis contacts or applications of force, which constitute force perhaps in a physics sense, were intended to be included by Congress. How do you deal with the government's exhaustion argument, which counsel mentioned at the close? Well, we concede that we didn't raise the domestic aspect of the case. Okay, but the issue of whether there's sufficient physical force under the Oregon statute to satisfy 16A was raised. Well, that's been the issue from day one. That has been the issue before Judge Bennett and the immigration court and all of our briefs. So I think we have exhausted our remedies on that. Thank you, counsel. Thank you very much. The case just argued is submitted, and we thank both counsel for the arguments. The next case on the calendar, Jenner v. Ashcroft, has been submitted on the briefs, which brings us to Maytrek and Kapanee v. O'Donnell. And just for planning purposes, I think we will take a break at the conclusion of the next argument. Thank you.
judges: Graber, Gould, Berzon